Mary N. Crofoot v. Commissioner. Estate of Adeline Nash Myers, Deceased, Adeline Barbeau Myers and Esther Myers Stryker, Administratrices with will annexed, and Estate of George W. Myers, Deceased, Adeline Barbeau Myers and Esther Myers Stryker, Executrices, v. Commissioner.
Crofoot v. Commissioner
Docket Nos. 3665, 4327.
United States Tax Court
1945 Tax Ct. Memo LEXIS 323; 4 T.C.M. (CCH) 97; T.C.M. (RIA) 45036; January 25, 1945
E. B. Crofoot, Esq., 637 Omaha Nat. Bank Bldg., Omaha, Nebr. Frank A. O'Connor, Esq., Francis J. O'Connor, Esq., and W. C. Fraser, Esq., for the petitioners. Gene W. Reardon, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: Respondent determined *324 the following deficiencies in income tax: Docket
No.
Name
Amount
3665
Mary N. Crofoot
$47,332.85
4327
Estate of Adeline Nash Myers,
Deceased; Estate of George
W. Myers, Deceased
66,595.98
The sole question is - was a transaction whereby petitioners received 5 percent 20-year promissory notes of E. W. Nash Building Company in exchange for its cumulative 6 percent preferred stock and cash a distribution in partial liquidation, taxable under the capital gain provisions of the Internal Revenue Code, or an exchange pursuant to a plan of reorganization under which gain is to be recognized for tax purposes only to the extent of the cash received? [The Facts] We find the facts to be as stipulated by the parties. Summarizing them, Mary N. Crofoot filed her income tax return for 1941 with the collector of internal revenue for the district of Nebraska. Adeline Nash Myers and George W. Myers (husband and wife) filed a joint income tax return for the same year with the collector of internal revenue for the district of Iowa. Adeline Nash Myers died July 13, 1942, and George W. Myers died January 13, 1943. Adeline Barbeau Myers and Esther Myers Stryker, *325 petitioners herein, are the duly appointed, qualified and acting administratrices, c.t.a., of the Estate of Adeline Nash Myers, and executrices of the Estate of George W. Myers. On February 20, 1920, the Burgess-Nash Building Company was incorporated under the laws of the State of Nebraska with broad corporate powers incident to its principal object of acquiring, owning, operating, and selling real property. Its authorized capital originally was 6,000 shares of common stock, with a par value of $100 per share, and 6,000 shares of cumulative 6 percent preferred stock, with a par value of $100 per share. The name of the corporation was changed to E. W. Nash Building Company (hereinafter referred to as Building Company) by an amendment to the articles of incorporation adopted by the stockholders on February 20, 1930. Building Company engages in the business of owning and operating a number of large buildings in Omaha, Nebraska, and it also has substantial security holdings. The outstanding capital stock of Building Company at all times material here was owned by lineal descendants of the late E.W. and Catherine B. Nash. In December 1928 Building Company owned a large modern building *326 now known as the Electric Building, located in downtown Omaha. At that time it had outstanding 4,000 shares of preferred stock, which, under the laws of Nebraska, had full voting power, all owned by The C. B. Nash Company, a Nebraska corporation. Under a tax-free reorganization, approved by the stockholders of Building Company on December 26, 1928, it acquired from The C. B. Nash Company all of the real property of the latter, including four large downtown pieces of real estate, which were not readily salable, and certain other property and securities, in exchange for the balance of the authorized but then unissued capital stock of Building Company, namely, 6,000 shares of common stock and 2,000 shares of preferred stock. After the exchange was effected, The C. B. Nash Company, then owning 100 percent of the authorized and issued stock of Building Company, was dissolved and the common and preferred stock of Building Company was distributed ratably to the stockholders of The C. B. Nash Company. At the annual meeting of stockholders of Building Company held on February 20, 1930, the stockholders authorized the board of directors to sell the real estate holdings of the company when *327 this could be done to advantage and to liquidate the company. Due to the economic conditions existing in the thirties and to the date of the hearing it was impossible to dispose of any of the company's real estate holdings at a satisfactory price, and Building Company continued to hold and operate substantially all of its original properties. In 1940 Building Company acquared on additional downtown building at a cost in excess of $125,000, a portion of which was paid by the exchange of residential property owned by it. From the proceeds of a life insurance policy carried by Building Company on the life of a large debtor, it paid all of the accrued and unpaid dividends on the preferred stock to and including January 13, 1937, and made a capital distribution of $25 a share on the preferred stock, reducing the par value of the preferred stock to $75 a share and the aggregate par value of the outstanding shares to $450,000. An appropriate legend stating the reduction in par was stamped on the face of each certificate. In 1940 Building Company acquired 20 shares of preferred stock from one of its stockholders in satisfaction of a debt. Thereafter 5,980 shares were outstanding with an *328 aggregate par value of $448,500. Up to that time no dividends had ever been paid on its common stock. Although dividends on the preferred stock were being regularly paid, a considerable portion of the dividends had been paid out of capital due to a large deficit in the earned surplus account. Neither class of stock had ever been traded in and neither had any established market value. The credit of Building Company was excellent, and its directors felt that obligations of it, if issued, could be more readily disposed of. On February 4, 1941, the stockholders of Building Company approved a plan of reorganization providing for the issuance of new 20-year, registered, 5 percent promissory notes to the stockholders in exchange for all of the issued and outstanding preferred stock, $100 in face amount of the notes being issued in exchange for each $100 of par value preferred stock, with adjustments of interest and current dividends to the date of exchange. This plan was executed and the preferred stock was cancelled and retired as of March 1, 1941. Thereafter Building Company's issued and outstanding capital stock consisted of 6,000 shares of common stock. The promissory notes contained *329 a callable provision whereby "E. W. Nash Building Company reserves the right to prepay notes of this series (in whole, or in part, in amounts aggregating $10,000 or any multiple thereof) on any interest paying date after March 1, 1943, upon giving noteholders at least 60 days' previous written notice." By reason of the amendment to the articles of incorporation eliminating the preferred stock from the capital structure, Building Company has effected an annual saving in Nebraska Occupation Tax of $275 per year. Petitioner, Mary N. Crofoot, as a party to the plan of reorganization of Building Company, in pursuance of said plan, on or about March 1, 1941, surrendered her 1,365 1/2 shares of preferred stock of the par value of $75 per share and an aggregate value of $102,412.50 to the company in exchange for its promissory notes dated March 1, 1941, with an aggregate face value of $102,200 and $212.50 in cash. The cost or other basis to her of the stock was $13,874.02, and the fair market value of the notes received in exchange therefor was equal to the face value of such notes. Adeline Nash Myers (decedent in the case "Estate of Adeline Nash Myers, et al. v. Commissioner of Internal *330 Revenue") as a party to the plan of reorganization of Building Company, in pursuance of the plan, on or about March 1, 1941, surrendered her 1,438 shares of preferred stock of the par value of $75 per share and an aggregate value of $107,850 to the Company in exchange for its promissory notes dated March 1, 1941, with an aggregate face value of $107,700 and $150 in cash. The cost or other basis to her of the stock was $3,631.64 and the fair market value of the notes received in exchange therefor was equal to the face value of such notes. Building Company, since March 1, 1941, has continued to operate in substantially the same manner as it had previously, without retiring any of the "Twenty Year, Registered, Five Per Cent Promissory Notes." At the time of the hearing it was not negotiating for the sale of any of its properties but was continuing to conduct its business and to operate its properties as it had in the past. The common and preferred stock of Building Company - before the exchange of the latter for notes as set out above - each had full voting rights. Before and after the exchange the number of shares of common stock owned by Mary N. Crofoot was 1,356 1/2 and by Adeline *331 Nash Myers, 1,356. As a result of the exchange the interest of Mary N. Crofoot in the voting stock decreased from 22.7 percent to 22.6, and that of Adeline Nash Myers from 23.3 percent to 22.6. Respondent determined that the retirement and cancellation of the outstanding preferred stock of Building Company constituted a partial liquidation and that the excess of the cash and the fair market value of the notes received by the stockholders over the basis of their surrendered stock was a short-term taxable capital gain. Petitioners contend that the transaction constituted a tax-free exchange within the provisions of section 112 (b) (3), (c) (1), and (g) (1) (E), I.R.C.
Subsequent to the filing of the petitions in these proceedings the deficiencies were paid to the proper collectors. Payment in each instance was made within one year after the notice of deficiency was mailed. The pertinent provisions of the statute are shown in the margin. [1]
*332 Respondent urges that the notes received by petitioners do not constitute securities and consequently that the exchange of preferred stock for them was not a nontaxable exchange within the purview of section 112 (b) (3), supra; that the surrender of the preferred stock to the issuing corporation effected a liquidation of the preferred stockholders' proprietary interest; that, therefore, there was not such a continuity of proprietary interest as contemplated by the statute; and that the petitioners are not entitled to exemption from income tax on the gain realized by them. The principal case relied upon is Le Tulle v. Scofield, 308 U.S. 415. In Clarence J. Schoo, 47 B.T.A. 459, respondent made substantially the same contentions. In that case the corporation under circumstances quite similar to those now before us, had issued 25-year 5 percent debenture bonds in exchange for its 7 percent preferred stock. In holding that this exchange fell within the provisions of section 112 (b) (3), we said: The respondent contends that the statutory word "recapitalization" may not be read as meaning a type of statutory "reorganization" unless through it persists a continuation *333 of the same proprietary interest; and that a substitution of bonds for shares breaks the proprietary interest and substitutes a creditor interest. To support this argument, reliance is principally placed on LeTulle v. Scofield, 308 U.S. 415. This, however, is to take the LeTulle case out of its setting in the consideration of a "merger or consolidation" of two corporations under subdivision (A), and to apply it to a recapitalization of a single corporation. As a contemplated result of the "merger or consolidation" of two corporations, the individual taxpayer, for his shares in one of the corporations and other properties, received cash and bonds of the other corporation. This was something substantially different from what he gave up. It was not a mere reshaping of his interest in the same corporation through a recapitalization. In the present case, the substitution of the debentures for the preferred shares was in substance not so much of a change as the words imply. In both, the holder was entitled only to dividends or interest out of income, and had no greater rights than unsecured creditors. The respondent argues that the petitioner's receipt of the bonds was a liquidation *334 distribution, as defined in section 115 (i), so that the value of the bonds is to be treated as in full payment for the preferred shares, with resulting gain, citing section 115 (c). This, however, would be in disregard of the sentence in that subsection that the gain to the distributee shall be recognized only to the extent provided in section 112, and section 112 (b) (3) forbids the recognition of any gain in a recapitalization exchange of stock solely for securities. Other cases in which a similar holding has been made are Lelia S. Kirby, 35 B.T.A. 578, modified on other points 102 Fed. (2d) 115, and Annis Furs, Inc., 2 T.C. 1096. See also Globe-News Publishing Co., 3 T.C. 1199, 1204 and cases cited supporting the conclusion there expressed that: "Securities may take the form of shares of stock, bonds, or notes." In our opinion the cited cases are controlling. The exchange by petitioners of preferred stock in Building Company for its long-term notes, in pursuance of a plan of reorganization, was a transaction on which no gain or loss is to be recognized under the provisions of section 112 (b) (3), supra. In reaching this conclusion *335 we have not overlooked respondent's argument that a different result is required here because of the provision contained in the notes permitting the maker to call them for payment in multiples of $10,000 on any interest payment date after March 1, 1943, on 60 days previous notice. This, in our judgment, does not prevent them from being securities. The practice of incorporating such a clause in long-term securities is quite common. It does not, however, transmute them into short-term securities. Decision will be entered in each case for the petitioner. Footnotes
1. SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS. (a) Computation of Gain or Loss. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, * * *. (b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind. - * * * * *
(3) Stock for Stock on Reorganization. - No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * * * *
(c) Gain from Exchanges not Solely in Kind. - (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. * * * * *
(g) Definition of Reorganization. - As used in this section and section 113 - (1) the term "reorganization" means * * * (D) a recapitalization, * * *. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; * * *. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112↩. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, * * *.